**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**


| | | |
|---|---|---|
| DENNIS HINES, | ) | CASE NO:    3:08 CV 2916 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | NANCY A. VECCHIARELLI |
| TIM BRUNSMAN, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |


        This matter is before the undersigned Magistrate Judge pursuant to Local Rule

72.2. Petitioner, Dennis Hines, ("Hines"), challenges the constitutionality of his

conviction in the case of *State v. Hines*, Case No. CR 2004 00, Allen County, Ohio

Court of Common Pleas.  Hines filed a Petition for Writ of Habeas Corpus pursuant to

28 U.S.C. § 2254 on December 15, 2008 in the United States District Court for the

Northern District of Ohio.  (Doc. 1.)  For the reasons set forth below, the Petition should

be **DISMISSED.**

## I.  FACTUAL AND PROCEDURAL BACKGROUND

        The Allen County Court of Appeals, Third Appellate District of Ohio, set forth the

facts of this case on direct appeal.  These binding factual findings "shall be presumed to

be correct," and Hines has "the burden of rebutting the presumption of correctness by

clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358,

360-61 (6th Cir. 1998).  The facts as recited by the state court of appeals in Hines's first

appeal are, in relevant part, as follows:

> [*P2] This case stems from a criminal investigation of cocaine and crack cocaine trafficking involving Hines. As part of the investigation, the police used a confidential informant to make three controlled buys of cocaine and crack cocaine. Before each transaction, law enforcement officers would photocopy money for identification purposes. The money was then issued to the confidential informant for the purpose of purchasing drugs.

> [*P3] The first controlled buy occurred on or about June 17, 2003. The confidential informant met with Gene Klinger (hereinafter "Klinger") in Kenton, Ohio. Klinger and the confidential informant got into an automobile driven by Klinger and the two of them drove to Lima, Ohio. Once in Lima, Klinger parked his motor vehicle in a parking lot at the intersection of Main Street and Grand Avenue. Klinger then took the money he received from the confidential informant and exited the vehicle. Subsequently, Klinger walked along Grand Avenue where Hines met him. While this was taking place, the confidential informant remained in Klinger's vehicle. Police surveillance observed Klinger and Hines conduct a hand-to-hand exchange, after which Klinger returned to his vehicle and handed cocaine or crack cocaine to the confidential informant. [*P4] Following the sale, law enforcement officers followed Klinger and the confidential informant back to Kenton. Klinger dropped the confidential informant off in Kenton. The confidential informant then contacted the investigators and turned over all of the drugs he had obtained from Klinger.

> After the first controlled buy, law enforcement officers weighed the drugs and discovered the amount was lower than the amount of drugs paid for by the confidential informant. Later that day, Klinger contacted the confidential informant to inquire whether he was satisfied with the drugs he had purchased. The confidential informant complained to Klinger that the amount of drugs received was lower than expected. Klinger told the confidential informant that he would have to talk to his contact in Lima. Klinger later contacted the confidential informant and told him that they could go to Lima and obtain the remaining drugs which had been mistakenly excluded. Thereafter, the confidential informant and Klinger went back to Lima in order to obtain the additional drugs. Klinger parked in the same parking lot, approached a parked car, and returned to his vehicle with a package of drugs. Law enforcement officers were unable to conduct surveillance of this second exchange since the arrangement was made so late. The drugs purchased in the first controlled buy included 4.95 grams of crack

cocaine in the first transaction and 4.03 grams of crack cocaine in the second transaction. The second and third controlled buys resulted in the purchase of 10.37 grams of crack cocaine and 9.72 grams of cocaine.

[*P7] On July 3, 2003, following the third controlled buy, investigators sought and obtained a valid warrant to search Hines' residence. During their search, investigators discovered cocaine, multiple plastic bags containing cocaine residue, digital scales, two loaded firearms, and three-thousand dollars ($ 3,000) in cash, which included some of the money given to the confidential informant to facilitate the third controlled buy. As a result of the investigation and search of his residence, Hines was arrested and taken into police custody.

[*P8] On January 15, 2004, Hines was indicted for five counts which included: count one of Trafficking in Crack Cocaine in violation of R.C. 2925.03(A)&(C)(4)(d), a felony in the third degree; count two of Trafficking in Crack Cocaine pursuant to R.C. 2925.03(A)&(C)(4)(e), a second degree felony; count three of Trafficking in Powder Cocaine under R.C. 2925.03(A)&(C)(4)(c), a fourth degree felony; count four of Possession of Powder Cocaine, in violation of R.C. 2925.11(A)&(C)(4)(a), a fifth degree felony; and count five of Having Weapons While Under Disability, a violation of R.C. 2923.13(A)(3), a fifth degree felony. Hines pleaded not guilty to all charges, and the matter proceeded to a jury trial.

(Exhibit 19, Opinion; *State v. Hines*, Allen App. No. 1-04-47, 2005 Ohio 6870

(December 27, 2005) at ¶¶2-8)

### A.    State Conviction

On January 15, 2004, an Allen County Grand Jury indicted Hines on five counts: count one - trafficking in crack cocaine, a third degree felony; count two - trafficking in crack cocaine, a second degree felony; count three - trafficking in powder cocaine, a fourth degree felony; count four - possession of powder cocaine, a fifth degree felony; and count five - having weapons while under disability, a fifth degree felony. (Exhibit 1.) Hines, through counsel, entered a plea of not guilty to all counts on the indictment, and the case was set for trial. (Exhibit 2.)

On February 12, 2004, Hines, through counsel, moved to suppress any evidence

seized pursuant to a search warrant of his residence on July 3, 2003 and the results of scientific tests upon items seized.  (Exhibit 3.)  Hines also filed a motion in limine to prevent alleged hearsay testimony. (Exhibit 4.)  On February 27, 2004, the trial court overruled the motion to suppress. (Exhibit 5.)  Hines filed a supplemental motion to suppress asserting the police failed to give notice of their intention to execute the search warrant and a second supplemental motion to suppress asserting the officers failed to serve a copy of the search warrant upon Hines and to give a receipt for the property taken.  (Exhibits 6 & 7.)  On March 23, 2004, the trial court overruled both motions to suppress.  (Exhibit 9.)

The court held trial on April 27-29, 2004 and a jury found Hines guilty on all charges.  (Exhibit 10.)  The court ordered Hines to serve a sentence of five years for trafficking in crack cocaine (count one), eight years for trafficking in crack cocaine (count two), eighteen months on trafficking in powder cocaine (count three), eleven months for possession of cocaine (count four), and eleven months for having a weapon while under disability (count five).  (Exhibit 11.)  The trial court ordered that counts one, two, and three be served consecutively and consecutive to counts four and five, which are to be served concurrently.  The court's sentence resulted in a total sentence of fifteen years and five months in prison. *Id.*

On May 12, 2004, Hines moved for a new trial.  (Exhibit 12.)  The State filed a brief in opposition.  (Exhibit 13.)  The trial court denied the motion for a new trial. (Exhibit 14.)

### B.     First Direct Appeal

Hines, through counsel, timely appealed to the Third District Court of Appeals,

-4-

Allen County, Ohio.  (Exhibit 15.)  He set forth the following assignments of error:

> 1. It was an error of law for the trial court to enter a conviction and impose an enhanced sentence for the drug trafficking offenses in count one, two, and three of the indictment.
>
> 2. The trial court committed an error of law by imposing maximum consecutive sentences.

(Exhibit 16.)  The State filed a brief in response. (Exhibit 17.)  Hines filed a reply brief.

(Exhibit 18.)  On December 27, 2005, the court of appeals affirmed the judgment of the

trial court.  (Exhibit 19.)

On February 10, 2006, Hines, through counsel, timely appealed to the Ohio

Supreme Court under Case No. 06-0313.  (Exhibit 22.)  In his memorandum in support

of jurisdiction, Hines asserted the following proposition of law:

> I. Contrary to *United States v. Booker*, *Blakely v. Washington*, and *Apprendi v. New Jersey*, the trial court exceeded its statutory authority by imposing an enhanced sentence based upon additional facts which were not contained in the verdict form nor found by the jury.

(Exhibit 23.)  The State did not file a memorandum opposing jurisdiction.  On June 23,

2006, the Ohio Supreme Court reversed the judgment of the court of appeals and

remanded the case to the trial court for resentencing consistent with *State v. Foster*,

109 Ohio St.3d 1, 2006 Ohio 856 (2006).  (Exhibit 24.)

**C.  Application to Reopen Appeal**

During the pendency of his direct appeal, on January 27, 2006, Hines, *pro se*,

filed an application to reopen his appeal pursuant to Ohio Appellate Rule of Procedure

26(B), setting forth the following assignments of error:

> 1. Appellant's Fourth Amendment rights were violated where the affidavit in support of the search warrant contained insufficient information to establish probable cause, and the denial of the motion to suppress was

reversible error.

2.  The trial court erred and abused its discretion in refusing to grant the motion to suppress based upon the violation of the constitutional knock and announce requirement.

3.  The systematic exclusion of black jurors by the State violated appellant's right to a fair trial by an impartial jury and requires reversal of the resultant conviction under the Sixth Amendment.

4.  Appellant was denied the effective assistance of counsel guaranteed by the State and Federal Constitutions where trial counsel failed to raise proper objections to unconstitutional procedures.

5.  Appellant's constitutional right to the effective assistance of counsel was violated where counsel failed to properly research, prepare and investigate for trial, failed to make the adversarial testing process work at trial, and where there was a complete breakdown in attorney-client communication.

6.  Improper comments by the prosecutor during opening and closing argument to the jury infected the entire proceedings with unfairness and violated appellant's right to a fair trial and to due process of law guaranteed by the State and Federal Constitutions.

7.  Appellant's rights to cross-examine adverse witnesses under the confrontation clause of the United States Constitution was violated by the admission of out-of-court statements attributed to a third party where appellant was never provided any opportunity to cross-examine the witness.

8.  The evidence in this case was insufficient as a matter of law to sustain the convictions and due process was violated thereby.

9.  The convictions in this case are against the manifest weight of the evidence and violate equal protection and due process law.

(Exhibit 20.)  The State did not file a response.  The court of appeals denied reopening

the appeal based on the merits of Hines's ineffective assistance of appellate counsel

argument.  (Exhibit 21.)

On April 20, 2006, Hines, *pro se*, appealed the denial to reopen the appeal to the

Ohio Supreme Court under Case No. 06-0783. (Exhibit 25, Notice of Appeal, Case No. 06-0783.)  In his memorandum in support of jurisdiction, Hines asserted the following propositions of law:

I.      The failure of a court of appeals to pass upon each assignment of error presented constitutes a violation of due process of law and prejudicial error, requiring reversal.

II.     Where appellate counsel overlooks significant and obvious issues of constitutional magnitude in favor of weaker arguments with little or no chance of success, the Sixth and Fourteenth Amendments are violated if the extant issues hold a reasonable possibility of success had they been raised.

III.    Where an Affidavit in support of a search warrant does not contain sufficient operative facts to constitute probable cause, the denial of a motion to suppress based thereupon violated due process and the Fourth and Fifth Amendments.

IV.     Where police officers fail to fulfill the Constitutional requirement to knock and announce their presence prior to entering a residence, the Fourth Amendment is violated and the failure to grant a motion to suppress therefor is reversible error.

V.      The systematic exclusion of Black jurors by the prosecution in a criminal case, in the absence of a "race neutral" explanation, violates the defendant's rights under the Sixth Amendment and requires reversal of a subsequent conviction.

VI.     Where trial counsel fails to raise objections to unconstitutional procedures and the defense is prejudiced thereby, the Sixth and Fourteenth Amendments are violated and reversal is required.

VII.    Where trial counsel demonstrably failed to prepare for trial and, as a result, the adversarial testing process does not work at trial, the Sixth and Fourteenth Amendments have been violated and reversal is required.

VIII.   Where a prosecutor in a criminal case argues facts not in evidence, denigrates defense counsel, improperly vouches for the credibility of the state's witnesses, and ridicules the defendant, the entire proceedings are infected with unfairness so as to violate due process of law and require reversal.

IX.     Where out-of-court statements attributed to a third party are admitted against the defendant in a criminal case who has not been provided any opportunity to cross-examine the witness, the Sixth Amendment right to Confrontation is violated and reversal is required.

X.      Where the evidence adduced at trial, viewed in the light most favorable to the state, is still insufficient to prove each element of each offense charged beyond a reasonable doubt, the right to due process of law is violated and reversal is required.

(Exhibit 26.)  The State did not file a response.  On July 5, 2006, the Ohio Supreme Court dismissed the appeal as "not involving any substantial constitutional question." (Exhibit 27.)

**D.     Resentencing and Second Direct Appeal**

Pursuant to the Ohio Supreme Court's decision in Case No. 06-0313, the trial court held a resentencing hearing.  Before the trial court held the hearing, Hines, *pro se*, filed a motion stating that the trial court was required to impose minimum sentence. (Exhibit 28.)  On September 26, 2006, the trial court imposed the same aggregate sentence of fifteen years and five months.  (Exhibit 29.)

Hines filed a timely notice of appeal of his resentencing to the Third District Court of Appeals, Allen County, Ohio in Case No. CA 2006 0086.  (Exhibit 30.)  In his brief, he set forth the following assignments of error:

1.      "The trial court erred in sentencing Dennis Hines to a non-minimum, consecutive prison term for aggravated robbery in violation of the United States Constitution and her (sic) rights under the Constitution."

I.      Due Process and Ex Post Facto

II.     Trial by Jury

III.    Separation of Powers

IV.     Equal Protection

-8-

V.    Rule of Lenity

(Exhibit 31.)  The State filed a brief in response.  (Exhibit 32.)  On June 25, 2007, the court of appeals affirmed the judgment of the trial court.  (Exhibit 33.)

On August 10, 2007, one day after the 45 day deadline for filing a notice of appeal, the Ohio Supreme Court Clerk of Courts  received Hines's notice of appeal regarding the court of appeals' decision on resentencing.  The Court of Clerks stamped the notice of appeals "Received" but did not accept the document for filing.

On October 15, 2007, Hines, *pro se*, filed a Notice of Appeal and a Motion for Delayed Appeal to the Ohio Supreme Court.  (Exhibits 34 & 35.)  In his Motion for Delayed Appeal, Hines, *pro se*, appealed the court of appeals decision on resentencing. (Exhibit 35.)  On December 21, 2007, the Ohio Supreme Court denied the delayed appeal.  (Exhibit 36.)

**E.    Federal Habeas Corpus**

Hines, *pro se*, filed the instant petition for a writ of habeas corpus that was signed by Hines and placed in the prison mailing system on December 5, 2008 and received by the court on December 15, 2008.  His grounds for relief are as follows:

> **GROUND ONE:** "6th and 14th Amendment violation of right to have jury find verdict beyond reasonable doubt under Due Process and Equal Protection Clauses."
> **Supporting Facts:** "Where jury did not make a specific finding of the amount of controlled substance, and where factors to enhance conviction and sentence beyond statutory maximum were not provided in indictment as fair notice of the charges and thereby submitted to the jury and proven beyond a reasonable doubt, the imposition of convictions and elevated sentences resulting from illegal findings by trial court was in violation of the Sixth and Fourteen Amendments of the Constitution."

> **GROUND TWO:** "Violation of due process under 4th, 5th, 6th and 14th Amendments, as a result of fatal search warrant absent probable cause."

-9-

Supporting Facts: "The search warrant issue was based upon constitutionally inadequate affidavit product of innuendo and compound hearsay as opposed to personal knowledge of police affiant. The evidence adduced at suppression hearing showed knock and announce requirement was violated and that the police failed to obtain a warrant as an exception to the rule. The trial court committed an abuse of discretion in denying motion to suppress based upon pretextual excuse of arresting officers."

**GROUND THREE:** "5th and 14th Amendments violation of right to jury of peers under the Due Process and Equal Protection Clauses and Batson."
**Supporting Facts**: "After the trial court dismissed one of two black jurors, the prosecutor then used a peremptory challenge to remove the only other prospective black juror, without having given a race neutral explanation."

**GROUND FOUR:** "6th and 14th Amendments violation of affective (sic) assistance of trial and appellate counsel."
**Supporting Facts:** "Trial counsel failed to raise objection to systematic exclusion of black jurors, to move to exclude evidence of prior conviction submitted to jury, to object to improper jury instructions, and to object to verdict in violation of fair notice rule. Appellate counsel failed to raise substantial federal and state constitutional issues on direct appeal as of right, including *Batson* claim, prosecutor misconduct, 4th Amend. Violation, and 6th Amend. Confrontation Clause violation, etc."

**GROUND FIVE:** "6th and 14th Amendments violation of right to due process and equal protection that denied fair trial as a result of prosecutor misconduct."
Supporting Facts: "The state prosecutor, during opening arguments, misstated the evidence by informing the jury that the police "were watching the entire drug deal every time" (Tr.34), when the prosecutor actually had full and prior knowledge that the informant and the actual drug dealer had obtained the drugs completely outside of any surveillance or observation of any police officer. Further, in closing arguments, the prosecutor denigrated defense counsel, improperly vouched for the credibility of state witnesses, ridiculed petitioner, and argued facts not in evidence."

**GROUND SIX:** "6th and 14th Amendments violation of right to confront witness under Confrontation Clause."
**Supporting Facts:** "The prosecutor repeatedly elicited testimony recounting out-of-court statements attributed to a police informant whose own testimony was not presented. The police informant was the only individual against whom any actual evidence was adduced to demonstrate involvement in the drug transaction that formed the basis of the criminal charges in this case, and which purported to allege petitioner's involvement."

-10-

## II.  STATUTE OF LIMITATIONS

Respondent argues that the instant action should be dismissed because Hines's claims are barred by the statute of limitations.

Under 28 U.S.C. § 2244(d)(1), a person in custody pursuant to the judgment of a state court must file an application for writ of habeas corpus within one year from the latest of: (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application is removed, if the applicant was prevented from filing by such state action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.  Under 28 U.S.C. § 2244(d)(2), the running of the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.  An unsuccessful motion for delayed appeal to the Supreme Court of Ohio does not restart the running of the statute of limitations under § 2244(d)(1)(A), although, if properly filed, it tolls an unexpired limitations period during its pendency before the state courts.  *See, e.g., Searcy v. Carter*, 246 F.3d 515, 518-19 (6th Cir. 2001). [1]

_____

[1]Notably, the Supreme Court recently held that the *granting* of a delayed appeal motion restores the pendency of the direct appeal, thereby rendering the conviction non-final under § 2244(d)(1)(A).  *See Jimenez v. Quarterman*, --- U.S. ----, ----, 129 S.Ct. 681, 686 (2009).   In this case, however, petitioner's delayed appeal motion was denied; therefore, it could only be considered for tolling purposes under 28 U.S.C. § 2244(d)(2).

-11-

Below is a timeline of the events relevant in the discussion of whether Hines timely filed his habeas petition:

| | |
|---|---|
| June 27, 2007 | The Court of Appeals issued a judgment entry regarding Hines's resentencing on second direct appeal. |
| July 26, 2007 | Hines placed a notice of appeal to the Ohio Supreme Court in the prison's outgoing mailbox. |
| August 9, 2007 | The 45-day filing deadline for filing a notice of appeal to the Ohio Supreme Court, marking the end of Hines's direct appeal. |
| August 10, 2007 | The Ohio Supreme Court Clerk of Courts received Hines's untimely notice of appeal and stamped it "Received," but did not file the notice of appeal. |
| October 15, 2007 | Hines filed a motion for delayed appeal in the Ohio Supreme Court because the filing of his notice of appeal was not considered timely. |
| December 12, 2007 | The Ohio Supreme Court denied the motion for delayed appeal. |
| December 5, 2008 | Hines signed his federal habeas petition and places it in the prison mail system. |

In the instant action,  the one-year statute of limitations began to run on August 10, 2007, or one day after the 45-day period expired for filing a timely appeal to the state supreme court from the court of appeals' June 25, 2007 decision regarding resentencing on the second direct appeal.  *See* Rule II, § 2(A)(1)(a), Rules of Practice of the Supreme Court of Ohio; *see also* Fed.R.Civ.P. 6(a); *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000).

The statute of limitations ran from August 10, 2007 for a period of 67 days until October 15, 2007, when Hines filed a motion for delayed appeal in the Ohio Supreme

-12-

Court.  The statute of limitations was then tolled until the Ohio Supreme Court denied the motion on December 12, 2007.  The statute of limitations then ran for another 359 days beginning December 13, 2007 and continuing until the time Hines filed his habeas petition by signing it and submitting it to the prison mail system on December 5, 2008. Therefore, a total of 426 days are counted under AEDPA and Hines's claims before this Court were filed beyond the period of limitations.

Hines challenges this computation by asserting that he attempted to file a timely direct appeal to the Ohio Supreme Court, but that it arrived one-day late, on August 10, 2007, due to circumstances beyond his control.  Hines argues that the untimely filing of the notice of appeal in the Ohio Supreme Court was not attributable to him, but rather was "a direct result of state interference, whether on the part of the institutional mail room or of the court clerks."  (Traverse at 1.)  He asserts that he placed the notice of appeal in the mail with a two-week lead time that should have been enough for timely filing.

The Ohio Supreme Court has rejected the argument that a *pro se* prisoner's appeal is timely if it is turned over to prison authorities for mailing within the filing period. *State ex rel. Tyler v. Alexander*, 555 N.E.2d 966 (Ohio 1990) (*per curiam*).  *See also Vroman v. Brigano*, 346 F.3d 598, 603-604 (6th Cir. 2003).  Although the U.S. Supreme Court in *Houston v. Lack*, 487 U.S. 266, 270 (1988), adopted the mailbox rule, holding that a *pro se* prisoner's appeal is considered "filed" under federal law when it is turned over to prison authorities for mailing, the "Ohio Supreme Court has expressly rejected this rule." *Vroman*, 346 F.3d at 604.

-13-

This court is bound by the Ohio courts' resolution of an issue of state procedural law because "federal courts . . . defer to a state court's judgment on issues of state law and, more particularly, on issues of state procedural law." *Vroman*, 346 F.3d at 603. Therefore, this court must defer to the Ohio Supreme Court's determination that Hines's notice of appeal received by the Clerk of Courts on August 10, 2007 was untimely and that Hines's second direct appeal concluded on August 9, 2007.

Hines also states that he is entitled to equitable tolling because he "did not understand the calculation requirements for the one year period and thought he had one year from the date that the Ohio Supreme Court refused . . . to hear a delayed appeal." (Traverse at 3.)  This argument is unavailing.

 "[P]etitioner bears the . . . burden of persuading the court that he or she is entitled to equitable tolling." *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). Equitable tolling should be used sparingly.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002)  "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id.* at 560-61.

The Supreme Court has explained that "[w]e have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).  However, "[w]e have generally been much less forgiving . . . where the claimant failed to exercise due diligence in preserving his legal rights." *Id.*

-14-

In order to determine whether to equitably toll the statute of limitations, a court must consider the following five factors: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.  *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001).

Hines essentially argues that he thought that the statute of limitations did not begin to run until the Ohio Supreme Court rule upon his motion for delayed appeal. Hines does not assert that he lacked notice or knowledge that AEDPA, in general, has a one-year statute of limitations.  And even assuming that Hines lacked actual knowledge of his applicable filing deadline, the Sixth Circuit has held that "ignorance of the law alone is not sufficient to warrant equitable tolling."  *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004)(quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir.1991)).

Moreover, the Sixth Circuit has held that a petitioner is charged with having constructive knowledge of his filing deadline through published case law and the statutory provisions of the AEDPA and, therefore, cannot remain reasonably ignorant of his deadline. *See, e.g., Harvey v. Jones*, 179 Fed. Appx. 294, 300 (6th Cir. 2006) (holding that the petitioner could not have remained reasonably ignorant of his filing deadline until 2003 because a published Sixth Circuit decision in 2001 "informed" the petitioner of when the limitations period would begin to run); *Allen*, 366 F.3d at 403 ("Because of this court's decision in *Austin* and AEDPA's clear provisions regarding the statute of limitations, [the petitioner] cannot claim a lack of constructive knowledge regarding the filing deadline."); *McClendon v. Sherman*, 329 F.3d 490, 495 (6th Cir.

-15-

2003) (holding that even if the petitioner erroneously believed that his one-year limitations period had started to run when his state post-conviction proceedings concluded, "his confusion should have cleared a month later" when the Sixth Circuit published a decision that would have given him notice that a different filing deadline applied in his case); *see also Allen v. Bell*, 250 Fed. Appx. 713, 715-16 (6th Cir. 2007) (holding that petitioner could not claim a lack of constructive knowledge that the statute of limitations did not start to run until after the conclusion of his state post-conviction proceedings, because of published case law and the statutory provisions of the AEDPA).

 Hines has not proffered any cognizable reason for his alleged ignorance of this deadline.  Furthermore, an inmate's lack of legal training, poor education, or even his illiteracy does not give a federal court a reason to toll the AEDPA's limitations period. *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (holding that "where a petitioner's alleged lack of proficiency in English has not prevented the petitioner from accessing the courts, that lack of proficiency is insufficient to justify an equitable tolling of the statute of limitations"); *Montenegro v. United States*, 248 F.3d 585, 594 (7th Cir. 2001)(equitable tolling not justified by lack of response from attorney, language barrier, lack of legal knowledge, and transfer between prisons), *overruled on other grounds by Ashley v. United States*, 266 F.3d 671 (7th Cir. 2001).  Therefore, Hines has not demonstrated the first, second, and fifth *Dunlap* factors weigh in favor of equitable tolling.

 Hines also fails to demonstrate that he exercised due diligence in pursing his claims, the third *Dunlap* factor.  Hines offers no reason for his delay in filing other than

-16-

his alleged ignorance of law.  This is simply insufficient to support a finding in favor of equitable tolling.  *See Allen*, 250 Fed Appx. at 716 (finding lack of diligence where petitioner claimed ignorance of the law and did not allege that an extraordinary, external circumstance prevented him from filing his petition).

Finally, the fourth *Dunlap* factor need not be considered because Hines has failed to demonstrate that the other *Dunlap* factors weigh in his favor.  *See Vroman*, 346 F.3d at 606 ("Absence of prejudice is a fact to be considered only after a factor that might justify tolling is identified.")

Therefore, Hines has failed to satisfy his burden of persuading the court that he is entitled to equitable tolling under the *Dunlap* test and his petition should be dismissed as untimely.

Alternatively, Hines's petition should be denied as Grounds Two through Six are procedurally defaulted and Grounds One and Four lack merit as discussed below.

### III.  Procedural Default

Respondent asserts that all grounds are procedurally defaulted and should be dismissed.

When state courts refuse to review the merits of an alleged error because of a cited procedural violation, the petitioner has procedurally defaulted that claim.  Even constitutional errors will not be noticed on federal habeas corpus review if an adequate and independent state ground exists for upholding the conviction or sentence.  *Coleman v. Thompson,* 501 U.S. 722, 729-32 (1991); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  The Sixth Circuit's decision in *Maupin* sets out four inquiries that a district court should make when the state argues that a habeas claim has been defaulted by

-17-

petitioner's failure to observe a state procedural rule.

> First, the court must determine whether there is such a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. *Maupin*, 785 F.2d at 138.  Second, the court must decide whether the state courts actually enforced its procedural sanction.  *Id.*  Third, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim."  This question will usually involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims."  *Id.*  And, fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497,53 L.Ed.2d 594 (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error.  *Id.*; *see also Scott v. Mitchell*, 209 F.3d 854, 864 (6th Cir.), *cert. denied*, 531 U.S. 1021, 121 S.Ct. 588, 148 L.Ed.2d 503 (2000).

The procedural default may be excused if the petitioner shows cause for the procedural default and prejudice resulting from the alleged error.  *Maupin*, 785 F.2d at 138.  In addition, a court may notice an otherwise defaulted claim if a petitioner demonstrates "actual innocence."  This requires the petitioner to use  "new and reliable evidence that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 299 (1995), and to make a clear and convincing case that, but for a constitutional error, no reasonable juror would have found petitioner guilty of the crime.  *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992).

### A.      Grounds Two, Three, Four, Five, and Six

Respondent asserts that Grounds Two (unconstitutional search and seizure), Three (*Batson* challenge), Four (ineffective assistance of trial and appellate counsel), Five (prosecutorial misconduct), and Six (Confrontation Clause violation) are waived because Hines did not fairly present them to the state courts.

The substance of the federal claims submitted for habeas corpus review must be

-18-

"fairly presented" to the state's highest court because only in this manner will the state courts have been provided with a fair opportunity to pass upon and correct alleged violations of federal rights.  *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Coleman v. Thompson*, 501 U.S. 722, 735(1991). "Fair presentation of an issue requires that a petitioner give state courts a full opportunity to resolve any constitutional issues by involving 'one complete round' of the state's appellate review system."  *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir.2003), quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Respondent asserts that Grounds Two through Six were raised only as underlying claims in support of Hines's ineffective assistance of appellate counsel claim presented in an Ohio Appellate Rule 26(B) application to reopen.  Essentially, Respondent maintains Hines claimed in the application to reopen that appellate counsel was ineffective for failing to present Grounds Two through Six on appeal.  This portrayal is accurate, except for a portion of Ground Four, which speaks to the ineffective assistance of appellate counsel claim itself.  This portion of Ground Four appears to be fairly presented to the state courts, as Hines presented it to the court of appeals in the application to reopen, the court of appeals addressed the claim on the merits,[2] and Hines presented the claim to the Ohio Supreme Court.  The ineffective assistance of

---

[2]Although the court of appeals provided very limited analysis in its decision, it did state that Hines failed to raise "any genuine issue as to whether [he] was deprived of the effective assistance of counsel of appeal," citing *Strickland v. Washington*, 466 U.S. 688 (1984).  The court of appeals noted that Hines's "constitutional challenges to the evidence and conviction are not directly supported by the record or are speculative at best."  Based on this finding, the court of appeals denied the application to reopen. (Exhibit 21.)

-19-

appellate counsel claim is addressed separately on the merits in Section IV of this Report and Recommendation.

Hines asserts that because he raised Grounds Two through Six in his Ohio R. App. P. 26(B) application to reopen and to the Ohio Supreme Court on appeal of the denial of the application to reopen, they were fairly presented.  However, to be "fairly presented" the federal ground must also have been presented under the same theory as presented to the state court.  *See Caver*, 340 F.3d at 346; *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004). "Relatedness of the issues . . . does not save [petitioner's] claim." *Lott v. Coyle*, 261 F.3d 594, 607 (6th Cir. 2001).  Consequently, as in *Lott*, claims raised under the motif of ineffective assistance of counsel in state court are not the same claim when raised in federal court as trial error. *See Lott*, 261 F.3d at 611-12.  Thus, Hines failed to fairly present Grounds Two through Six.  A failure to fairly present the federal ground to the state's highest court constitutes an adequate and independent state procedural rule barring habeas review.  *See Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994); *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004). Therefore,  Grounds Two, Three, Four (to the extent it concerns ineffective assistance of *trial* counsel only), Five, and Six are procedurally defaulted.[3]

---

[3] Hines did not present these claims to the highest state court and, thus, they are unexhausted.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).  Federal courts will deem a petitioner's claim defaulted if the petitioner failed to exhaust that claim and the time for refiling an appeal in the state court has passed.   The federal court presumes that the state court would reject the appeal on independent and adequate state grounds if the petitioner tried to file it.  By declaring the claim forfeited, the federal court saves the petitioner and the state court from respectively preparing and rejecting a futile filing. The claim is then classified as procedurally defaulted and should be dismissed absent a

**B.     Ground One**

Respondent asserts that Hines also procedurally defaulted Ground One, which concerns alleged *ex post facto* and equal protection clause violations occurring during resentencing, specifically in the application of *State v. Foster*, 109 Ohio St. 3d 1 (2006), when the trial court imposed more than the minimum sentence.  Hines presented this ground in his second direct appeal to the court of appeals.  However, he did not timely appeal this ground to the Ohio Supreme Court.  Instead, Hines presented the ground in a motion for delayed appeal, which the Ohio Supreme Court denied on procedural grounds.

Ohio Supreme Court Rule § 2(A) requires that an appeal be perfected within 45 days from the entry of the judgment being appealed and failure to do so "divest[s] the Supreme Court of jurisdiction to hear the appeal."  Ohio Supreme Court Rule II § 2(A)(4) does allow a felon to seek to file a delayed appeal after expiration of the deadline, which the Supreme Court has discretion to hear if its finds adequate reasons for delay.  Here, the Ohio Supreme Court actually enforced its procedural rule requiring appeals to be perfected within 45 days by denying Hines's motion to file a delayed appeal.  The Sixth Circuit has recognized that a refusal by the Ohio Supreme Court to hear a delayed appeal amounts to an adequate procedural bar precluding habeas review.  *See Bonilla v.*

showing of cause and prejudice.  *See In re Cook*, 215 F.3d 606, 607-08 (6th Cir. 2000).
     Ohio law provides that an appellant must raise his claims on appeal at the first opportunity to do so.  *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).   This Court must assume that Ohio courts would follow their own procedural rules and bar Grounds Two through Six on the basis of *res judicata*.   The assertion of *res judicata* to bar claims not raised at the earliest opportunity is an adequate and independent ground upon which Ohio may rely to foreclose habeas review.  *See id.*

-21-

*Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (Ohio Supreme Court's denial of petitioner's

motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar

federal court review of petitioner's habeas corpus petition).

While Respondent demonstrates that Hines procedurally defaulted Ground One,

Hines successfully establishes cause and prejudice for this procedural default.

In general, a prison official's inaction that results in the denial of an application for leave

to appeal as untimely "presents an 'objective factor external to the defense that impeded

. . . efforts to comply with the State's procedural rule.' " *Maples v. Stegall*, 340 F.3d 433,

439 (6th Cir. 2003)(quoting in part *Coleman*, 501 U.S. at 753). In the instant action, Hines

signed a notice of appeal to the Ohio Supreme Court and submitted to the prison mail

system on July 26, 2007,[4] approximately two weeks before the deadline to file an appeal

to the Ohio Supreme Court.

The Sixth Circuit Court of Appeals in *Maples* explained, "Where a *pro se* prisoner

attempts to deliver his petition for mailing in sufficient time for it to arrive timely in the

normal course of events . . . , the [prison mail box] rule is sufficient to excuse a

---

[4]Respondent argues that no evidence exists that Hines attempted to mail the notice of appeal on July 26, 2007.  Respondent first argues that the certificate of service signed by petitioner on the notice of appeal certifies service to the Allen County Prosecutor and "contradicts petitioner's assertion of service upon the Supreme Court of Ohio at that time."  (Doc. 21 at 3.)  It is unclear why this certificate of service advising the court that the opposing party had been served the document and appears to be in compliance with Ohio Rule of Appellate Procedure 13(D) would "contradict" the fact that Hines also attempted to mail the document to the Ohio Supreme Court at that time.  Moreover, Hines submitted an unchallenged affidavit stating that he placed the Notice of Appeal in the outgoing institutional mailbox properly addressed to the Clerk of Courts for the Ohio Supreme Court on July 26, 2007.  (Doc. 12, Exhibit 35.)

procedural default based upon a late filing." *Maples*, 340 F.3d at 439.[5]

Like the petitioner in *Maples*, who timely attempted to file a petition five days before the deadline, *see id.*, Hines attempted to file his notice of appeal in a timely manner by submitting it to the mailroom two weeks before the deadline. The notice of appeal would have arrived timely, if prison mailroom personnel had mailed it when Hines first submitted it under the normal course of events. *See Maples*, 340 F.3d at 439. Respondent does not argue nor does the record contains any indication that Hines failed to follow prison mail procedures or somehow contributed to the delay in mailing. For these reasons, Hines has established that an objective factor external to his defense caused his procedural default. *See Maples*, 340 F.3d at 439.

As in *Maples*, Hines suffered prejudice because the Ohio Supreme Court refused to consider his claim that the imposition of a more than the minimum sentence during resentencing violated the *ex post facto* and equal protection clauses. Moreover, Hines no longer has any procedure available to present his claim to the Ohio Supreme Court.

---

[5]The analysis employed when determining whether a petitioner is in compliance with AEDPA's statute of limitations where a federal habeas court looks to state law to determine whether a petitioner timely filed his appeals in state court. *See Allen v. Siebert*, 552 U.S. 3 (2007). In contrast, to determine whether a petitioner has cause to excuse a procedural default, the court looks to federal law. *Maples*, 340 F.3d at 439. The Sixth Circuit in *Maples,* when employing the rationale of the prison mailbox rule to excuse a procedural default resulting from untimely filing in Michigan, a state that did not adopt the "mailbox rule," noted:

> This is not to say that the 'prison mailbox rule' established by *Houston v. Lack*, 487, U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), is binding on the state of Michigan, which it is not. *See, e.g., Adams v. LeMaster*, 223 F.3d 1177, 1183 (10th Cir. 2000) (nothing that "the *Houston* decision is not binding on state courts").

*Maples*, 340 F.3d at 439.

-23-

Respondent does not dispute that Hines has been prejudiced.  Therefore, the merits of

Ground One will be addressed in Section IV of this Report and Recommendation.

## IV.  REVIEW ON THE MERITS

### A.      Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") altered the

standard of review that a federal court must apply when deciding whether to grant a writ

of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as determined by
> the Supreme Court of the United States; or resulted in a decision that was based
> on an unreasonable determination of the facts in light of the evidence presented
> in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only

if the state court's decision is contrary to clearly established federal law or was based on

an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*,

549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly

established" only by holdings of the Supreme Court, not its *dicta*, and the law must be

clearly established at the time of the petitioner's conviction.  *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in
> state court.  Under the statute, a federal court may grant a writ of habeas corpus
> if the relevant state-court decision was either (1) "*contrary to . . .* clearly
> established Federal law, as determined by the Supreme Court of the United
> States," or (2) "*involved an unreasonable application of . . .* clearly established

-24-

Federal law, as determined by the Supreme Court of the United States."
*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is
"contrary to" clearly established federal law if it reaches a conclusion opposite to that
reached by Supreme Court holdings on a question of law or if it faces a set of facts
materially indistinguishable from relevant Supreme Court precedent and still arrives at
an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our
clearly established precedent if the state court applies a rule that contradicts the
governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable
application of federal law only if the deciding court correctly identifies the legal principle
at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*,
237 F.3d 722, 729-31 (6th Cir. 2001).  If a court fails to identify the correct legal principal
at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to
be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the
presumption of correctness by clear and convincing evidence."  *Id.*

**B.    Ground One**

In Ground One, Hines asserts violations of the due process and equal protection
clauses of the Constitution and alleges the trial court imposed more than the minimum
sentence without proper fact-finding by a jury.  Hines does not provide analysis of these
arguments in his petition or traverse, but instead requests that the court look to his state
court brief addressing these arguments.   In his brief to the court of appeals (Exhibit 20),
Hines argues that his resentencing pursuant to *State v. Foster*, 109 Ohio. St. 3d 1
(2006) violates the *ex post facto* clause and the equal protection clause.

-25-

At the time that the trial court found Hines guilty, Ohio Rev. Code § 2929.14 ("§ 2929.14") governed sentencing in Ohio.  Section 2929.14(B) provided as follows:

> (B)  Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(5), (D)(6), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925 of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
>
> > (1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
> >
> > (2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.

On June 24, 2004, the United States Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004).  *Blakely* held that the maximum sentence to which a court may sentence a defendant is the maximum sentence the court may impose solely on the basis of a prior conviction, facts reflected in the jury verdict, or facts admitted by the defendant.  *Blakely*, 542 U.S. at 303.  That is, the court may not enhance a defendant's sentence on the basis of judicial findings of fact other than notice of a prior conviction.

On February 27, 2005, the Ohio Supreme Court decided *State v. Foster*, 845 N.E.2d 470 (Ohio 2006).  In *Foster*, the Ohio Supreme Court overturned §§ 2929.14(B) & 2929.41(E)(4) as unconstitutional in light of *Blakely*.  *Foster* severed these unconstitutional portions of Ohio's sentencing statutes and preserved most of the remainder of the statutes.  The Ohio Supreme Court held that the resulting statutes allowed a court to sentence a defendant to any sentence within the sentencing range of an offense and to consecutive sentences without making judicial findings of fact of the

-26-

sort barred by *Blakely.*

On September 26, 2006, pursuant to a remand by the Ohio Supreme Court, the trial court resentenced Hines in accordance with *Foster.* The trial court sentenced Hines to terms of imprisonment identical to his original sentence. The appellate court upheld Hines's resentencing finding that Hines was not resentenced in violation of the *ex post facto* clause, noting that the sentencing ranges for felony offenses remained unchanged; thus, Hines had notice of the potential sentences for each of his offenses. The court of appeals also held that Hines did not present a true equal protection argument, but determined that "[w]hen *Foster* was decided, the Supreme Court went to great lengths to fashion an appropriate remedy, ultimately holding that severance was the only applicable remedy." (Exhibit 33.)

Article I, § 9 of the United States Constitution provides that no state shall pass *ex post facto* laws. U.S. Const, Art. I, § 9. The Constitution's bar against *ex post facto* laws, however, does not apply to courts:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts. Extending the Clause to courts through the rubric of due process . . . would circumvent the clear constitutional text. It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decision making, on the other.

*Rogers v. Tennessee,* 532 U.S. 451, 460 (2001).

Although the *ex post facto* clause does not apply to courts, "limitations on *ex post facto* judicial decision making are inherent in the notion of due process." *Id.* at 456. In particular, the Supreme Court has found that court may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction. *See Bouie v. City of Columbia*, 378 U.S.

347 (1964).  The Supreme Court has explicitly declined, however, to apply all the protections of the *ex post facto* clause to courts by way of the due process clause.  *Id.* at 458-461.

*Foster* differs considerably from *Bouie.*  The judicial enlargement of a criminal statute in *Bouie* was very different from the alleged enlargement in *Foster*.  In *Bouie*, a South Carolina statute prohibited entry onto land after the posting of notice prohibiting such entry.  Defendants were arrested pursuant to that statute during a lunch counter sit-in for civil rights when they were ordered to leave after being notified that they were trespassing if they remained.  The defendants had not been given notice prohibiting their entry to the lunch counter prior to their entry.  Upon appeal, the South Carolina supreme court re-interpreted the relevant statute to prohibit remaining on a property after notice was given as well as entry onto the property.  The Supreme Court struck down the convictions and agreed with the appellants that South Carolina had punished them for conduct that was not criminal at the time they committed it, thus violating the requirement of the due process clause that a criminal statute give fair warning of the conduct which it prohibits.  According to the Court, "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect."  *Bouie*, 378 U.S. at 354 (quoting Hall, GENERAL PRINCIPLES OF CRIMINAL LAW (2d ed. 1960), at 61).

*Foster* did not criminalize any conduct which had not been criminal prior to the decision.  Nor did *Foster* increase the maximum penalty that could be handed down for a crime.  Rather, *Foster* excised those portions of Ohio's sentencing statute that

-28-

required judicial findings of fact before a court could sentence a defendant to more than

a minimum sentence or to consecutive sentences.  *Bouie* does not prohibit this.

Hines's position is also foreclosed in part by *Dobbert v. Florida*, 432 U.S. 282

(1977).  As the Eleventh Circuit first pointed out in *United States v. Duncan*, 400 F.3d

1297 (11th Cir. 2006), *Dobbert* held that even a law later found to be unconstitutional

may give fair warning of what is prohibited and of the penalties the state intends to exact

for violating those prohibitions:

> Whether or not the old statute would in the future, withstand constitutional attack,
> it clearly indicated Florida's view of the severity of murder and of the degree of
> punishment which the legislature wished to impose upon murderers.  The statute
> was intended to provide maximum deterrence, and its existence on the statute
> books provided fair warning as to the degree of culpability to which the State
> ascribed to the act of murder.

*Duncan*, 400 F.3d at 1307-08.  Similarly, although portions of Ohio's sentencing statutes

at the time of Hines's criminal acts were unconstitutional, they nevertheless gave him

fair notice of the acts that were prohibited and the degree of punishment which the Ohio

legislature wished to impose on those who committed those acts.  As the reinterpreted

statute did not increase the maximum penalty to which Hines was potentially subject,

Hines was given fair warning of what was prohibited and of the potential penalties to

which he would be subject if he committed those acts.  *See United States v.*

*Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006); *United States v. Vaughn*, 430 F.3d

518, 524-25 (2d Cir. 2005); and *United States v. Lata*, 415 F.3d 107, 112 (1st Cir. 2005).

In addition, Hines's position is contradicted by *United States v. Booker*, 543 U.S.

220 (2005), and its progeny.  In *Booker*, the Supreme Court confronted the

constitutionality of a federal sentencing statute that resembled Ohio's insofar as it

required specified judicial findings of fact for upward departures from a base sentence. The Court found that such mandatory fact-finding violated the holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000)*, and excised those portions of the statute requiring judicial fact-finding before increasing a base sentence.  The Supreme Court also allowed sentencing courts to engage in fact-finding in determining sentences by using the previously-mandatory sentencing factors as guidelines that should be considered in sentencing.  The Court required other federal courts to apply both parts of its holding-- striking the mandatory findings on Sixth Amendment grounds and using the previously- mandatory factors as guidelines--to future cases because applying both holdings in combination best approximated the will of Congress in enacting sentencing reform.  *Id.* at 249.  Finally, the Court struck those sections of the statute requiring a relatively strict appellate review for departures from mandatory sentencing guidelines and found that the resulting statute implied appellate review under a "reasonableness" standard.  *Id.* at 259-60.

When the Ohio Supreme Court determined that Ohio's sentencing statutes violated the holding in *Blakely*, it explicitly turned to *Booker* to cure the statutes' unconstitutionality.  *Foster*, 845 N.E.2d at 495-96.  Thus, the Ohio Supreme Court excised those portions of the statutes requiring judicial fact-finding using certain factors before making upward departures from a base sentence or before sentencing to consecutive sentences.  Id. at 497-98.  It also instructed Ohio courts to use the factors enumerated in the statutes as guidelines in making sentencing determinations.  Id. at 498.  Sentencing courts were thus free to sentence defendants anywhere within the sentencing ranges set by the Ohio legislature for various crimes or to consecutive

-30-

sentences, using the previously-mandatory factors as guidelines to determine where in the range a defendant should be sentenced.  The resulting statutes, according to the Ohio Supreme Court, best approximated the will of the legislature in passing the sentencing statutes while doing away with the statutes' unconstitutionality.  *Id.*

A number of federal defendants have alleged that the federal sentencing statutes reshaped by *Booker* violate due process because they subject defendants to *ex post facto* laws.  Those challenges have been universally rejected.  *See United States v. Scroggins*, 411 F.3d 572, 575-78 (5th Cir. 2005); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005); *United States v. Dupas*, 417 F.3d 1064, 1068-69 (9th Cir. 2005); *United States v. Rines*, 419 F.3d 1104, 1106 (10th Cir. 2006); *Duncan*, 400 F.3d at 1306-08; and *Alston-Graves*, 435 F.3d at 343.  Hines makes no argument that distinguishes in any relevant respect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts.

Finally, Hines's argument that *Foster* violates the equal protection clause is not well-taken.  As noted by the state court of appeals, Hines did not make a true equal protection argument, but rather argued that he is entitled to the minimum sentence, which has been rejected for the reasons listed above.  To the extent that he does attempt to assert a true equal protection argument, it fails.  "The Equal Protection Clause prohibits states from making distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference."  *Wilson v. Morgan*, 477 F.3d 326, 333 (6th Cir. 2007) (internal quotation marks omitted).  Hines makes no allegation that the new rules of criminal procedure articulated in *Foster* or the *Apprendi* line of cases

-31-

make such a distinction, burdening a fundamental right or targeting a suspect class.

As such, Hines's argument that the state court should have sentenced him to the minimum sentence for his crimes is not well taken.  For this reason, Ground One lacks merit.

### C.      Ground Four - Ineffective Assistance of Appellate Counsel

In Ground Four, Hines asserts that he received ineffective assistance of appellate counsel on his first direct appeal because his attorney failed to present errors regarding a *Batson* claim, prosecutorial misconduct, Fourth Amendment violations, and a confrontation clause violation.  Like Ground One, Hines does not present any support of his argument in his petition or traverse, but rather asks the court to consider the arguments raised in his state appellate brief.

Defendants have a right to appointed counsel for the first appeal of right.  See *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  An appellant has no constitutional right to have every nonfrivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues on appeal are properly left to the sound judgment of counsel.  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). The standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984),  is applicable to claims of ineffective assistance of appellate counsel.  *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985).

Petitioner's counsel was ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two

-32-

components:

> First, the defendant must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so serious as to
> deprive the defendant of a fair trial, a trial whose result is reliable. Unless a
> defendant makes both showings, it cannot be said that the conviction . . . resulted
> from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

To prove ineffective assistance of appellate counsel, appellant must show

deficient performance of appellate counsel that is prejudicial to the defendant under the

*Strickland* test.  *See Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993).

Counsel must provide reasonable professional judgment in presenting the appeal.  *See*

*Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985).  "'[W]innowing out weaker arguments on

appeal and focusing on' those more likely to prevail, far from being evidence of

incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477

U.S. 527, 536 (1986), quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).  Failure to

raise "significant and obvious" issues on appeal can constitute ineffective assistance of

appellate counsel.  *Mapes v. Coyle* , 171 F.3d 408 (6th Cir. 1999). "[No] decision of this

Court suggests . . . that the indigent defendant has a constitutional right to compel

appointed counsel to press nonfrivolous points requested by the client, if counsel, as a

matter of professional judgment, decides not to present those points."  *Jones v. Barnes*,

463 U.S. 745, 750-54 (1983); *United States v. Perry*, 908 F.2d 56, 59 (6th  Cir. 1990)

(tactical choices are properly left to the sound professional judgment of counsel).

Failure of appellate counsel "to raise an issue on appeal is ineffective assistance only if

there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005), citing *Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001).

### 1.    *Batson* Claim

Hines argues that appellate counsel was ineffective for failing to raise a *Batson* claim on appeal.  Hines also argues that trial counsel was ineffective for failing to raise a *Batson* claim during voir dire and that appellate counsel was ineffective for failing to raise the issue of trial counsel's alleged constitutional deficiency.

In *Batson v. Kentucky*, 476 U.S. 79, 88-89 (1986), the Supreme Court held that the Equal Protection Clause prohibits a prosecutor from challenging potential jurors solely on account of race.  There is a three step process to show discrimination under *Batson*.  First, a defendant must make a *prima facie* showing that the prosecutor removed a potential juror for a discriminatory reason.  Secondly, if the defendant makes such a showing, the prosecutor is required to articulate a nondiscriminatory reason for the removal.  Lastly, the trial court must determine whether the defendant has proved purposeful discrimination.  *United States v. Lucas*, 357 F.3d 599, 609 (6th Cir. 2004).

To make a *prima facie* showing of purposeful discrimination under *Batson*, the defendant must establish the following: (1) defendant is a member of a cognizable racial group; (2) the prosecutor used peremptory challenges to remove from the venire members of the defendant's race; and (3) the circumstances surrounding the removal must raise an inference that the prosecutor excluded the prospective jurors because of

their race.  *United States v. Watford*, 468 F.3d 891, 911-12 (6th Cir. 2006).[6]  Relevant

circumstances could include a pattern of strikes against black jurors and the

prosecutor's questions and statements during voir dire examination and when striking

potential jurors.  *Batson*, at 96-97.

Hines fails to raise an inference that the prospective juror in question was

excluded because of his race.  Hines only claims that the prosecution used a

peremptory challenge to remove one African-American juror.  However, the fact that the

government excluded the an African-American member of the jury venire without more,

does not state a *prima facie* case.  *See Wade v. Terhune*, 202 F.3d 1190, 1198 (9th Cir.

2000)( "the fact that the juror was the one Black member of the venire does not, in itself,

raise an inference of discrimination.");*United States v.  Esparsen*, 930 F.2d 1461, 1467

(10th Cir. 1991) ("Although *Batson* prohibits striking even one juror based on racial

grounds, it does not suggestion that the exclusion of jurors of a cognizable race

automatically creates a *prima facie* case of discrimination.")   Hines does not provide

any relevant information that would raise an inference that the government used race to

exclude the potential juror and, thus, that his *Batson* claim on appeal would have merit.

Accordingly, Hines does not demonstrate that appellate counsel was ineffective for

failing to raise this meritless claim.  *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir.2003)

("[A]ppellate counsel cannot be ineffective for a failure to raise an issue that lacks

merit.")

_____

[6]In *Powers v. Ohio*, 499 U.S. 400, 402 (1991), the Supreme Court modified the *Batson prima facie* case to allow a defendant to raise a *Batson* violation even if he is not of the same race as the excluded juror.

## 2.    Fourth Amendment Claims

Hines asserts that appellate counsel was ineffective for failing to raise two Fourth Amendment issues, specifically: (1) whether probable cause existed prior to the issuance of a warrant and (2) whether police were required to knock and announce their identity prior to serving the search warrant.  However, in both instances, Hines fails to demonstrate that either issue would change the outcome of his appeal.[7]

Hines presents only conclusory allegations, unsupported by the record or facts of any kind.  Hines broadly asserts that the affidavit supporting the search warrant contained "no actual facts" that would "even suggest probable cause."   (Exhibit 20.) Hines then argues that the affidavit contained hearsay evidence and thus was insufficient to support an issuance of the warrant.  However, "[i]t is well established that a magistrate may rely on hearsay evidence in making his probable cause determination." *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009), pet. for cert. filed (No. 08-11110) (June 23, 2009).  Hines does not provide the court with any insight, facts, or law, as to why either the unidentified hearsay evidence or the affidavit as a whole is unreliable.  Therefore, Hines does not show that this argument has merit and that appellate counsel was ineffective for failing to raise the ground on appeal.

Hines also asserts that evidence should have been excluded because officers did not "knock and announce" prior to serving the search warrant.  The Supreme Court has

---

[7]Fourth Amendment search and seizure claims are generally non-cognizable on federal habeas review.  *See Stone v. Powell,* 428 U.S. 465, 494 (1976).  However, Sixth Amendment claims based on counsel's failure to raise Fourth Amendment claims are cognizable on federal habeas review.  *See Northrop v. Trippett,* 265 F.3d 372, 378 (6th Cir. 2001) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986)).

held that in general, the reasonableness requirement of the Fourth Amendment constrains police officers to knock and announce their presence and intentions before executing a search of a residence. *Wilson v. Arkansas*, 514 U.S. 927 (1995).  However, a "no-knock" entry is permitted under the Constitution when the "police . . . have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by . . . allowing the destruction of evidence." *Id.* at 394.   Hines argues that the police officer's testimony presented in support of a reasonable suspicion that knocking would be dangerous or futile is not credible, but provides no basis for this argument.  Moreover, the issue of witness credibility is not the proper subject of an appeal because in a motion to suppress,  the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Clay*, 298 N.E.2d 137 (Ohio 1973).  A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence.  *See State v. Schiebel,* 564 N.E.2d 54 (Ohio 1990).  In the instant action, Hines has set forth no competent credible evidence that supports a finding that the officer was lying and, thus, appellate counsel had no reason to raise this issue on appeal.

Therefore, Hines's Fourth Amendment claims lack merit and appellate counsel was not deficient for failing to raise these claims.

### 3.    Prosecutorial Misconduct

Hines alleges that his appellate counsel should have asserted on appeal that the prosecutor engaged in multiple instances of misconduct during the trial.  However, because Hines fails to demonstrate that his proposed claims of prosecutorial misconduct

-37-

have merit, appellate counsel's performance was deficient in failing to raise these claims.

The standard applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process, *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974), or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir. 1979).  The court must first decide whether the complained-of conduct was in fact improper. *Frazier v. Hufman*, 343 F.3d 780 (6th Cir. 2003), citing *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001).  A four-factor test is then applicable to any conduct the court finds inappropriate: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and whether the evidence against the defendant was strong." *Id.* The court must decide whether the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt. *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982).

Hines first takes issue with the prosecutor's comment during opening statement that the police "were watching the entire drug deal every time." (Tr. at 34.)    The full quote is as follows:

> On the three different dates I mentioned, June 17th, June 24th, and July 3rd, this defendant sold cocaine to Gene Klinger here in Allen County, who then passed it on directly to Jim Stone and the police who were watching the entire drug deal every time.

(Tr. at 37.)

-38-

The evidence establishes that police officers did in fact conduct surveillance of the drug buys involving Hines and the other parties in question on these dates, although there was a second exchange made during the first drug deal that police officers were unable to observe.  (Tr. at 87-97; 190-94; 289-300.)   As the prosecutor's comments are substantially true and the trial court advised the jury that the opening statements are not evidence and the evidence will be presented in the form of witness testimony and exhibits (Tr. 30-31), the comments did not render the trial unfair or amount to a due process violation.  Therefore, Hines does not show that appellate counsel was ineffective for failing to raise this meritless claim.

Hines next objects to an unidentified comment where the prosecutor "denigrated defense counsel."  Hines does identify page numbers of the comment, 545-546, and the best guess as to what Hines refers is the following:

> Once again, Judge and Mr. Vandemark, I always, always, look forward to hearing Mr. Vandemark's closing arguments.  He's such an eloquent speaker.  He can take as little as this much and make this much out of it.  I always learn every time I have a trial with Mr. Vandemark.

(Tr. 545-46.)

Not every aspersion cast by a prosecutor upon a defense attorney's presentation of a case requires reversal of the guilty verdict. *See United States v. Young*, 470 U.S. 1, (1985)(stating that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial").  An accusation by a prosecutor that defense counsel was attempting to create a red herring has been found to have been allowable comment

-39-

on the strength, or lack of it, of the defendant's case. *United States v. Bernard*, 299 F.3d 467, 487-88 (5th Cir. 2002). Likewise, a prosecutor's argument that the defendant's case consisted of smoke screens, game-playing, distractions, and distortions was deemed a legitimate attempt to direct the jury's attention to the evidence and away from defense counsel's allegations that his client was framed. *United States v. Rivera*, 971 F.2d 876, 882-83 (2d Cir. 1992). The question is whether the prosecutor's remarks were so prejudicial that they rendered the trial fundamentally unfair.

Assuming the comment in the instant case was improper, it was not flagrant, as it comprises a short paragraph page in a voluminous transcript. Moreover, ample evidence existed, including the testimony of several officers who conducted surveillance of Hines's drug deals, of Hines's guilt. It is improbable that the prosecutor's statement so infected Hines's trial that his conviction constitutes a denial of due process. As this argument would have been unlikely to prevail on appeal, Hines has not shown that appellate counsel was ineffective for failing to raise it.

Next, Hines asserts that the prosecutor "improperly vouched for the credibility of state witnesses." The federal courts have generally recognized two types of objectionable vouching. First, the prosecutor supports the integrity of a witness by indicating a personal belief in the witness's credibility. *U.S. v. Francis*, 170 F.3d 546, 550-51 (6th Cir.1999). Second, the prosecutor invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, corroborating a particular witness' testimony. *Id.*

Hines does not provide the court with any specific citation or quote, just a page number and does not identify the witnesses. On the page identified by Hines, the

-40-

prosecutor neither states his personal belief that a state's witness is truthful nor does he invite the jury to believe that evidence exists outside the record that corroborates the story of a state witness.  Thus, Hines has not demonstrated improper vouching and, thus, it must be assumed that appellate counsel used reasonable professional judgment in not raising this meritless argument on appeal.

Hines next accuses the prosecutor of "ridicul[ing] the defendant," again, without identifying a particular comment or quote, just a page number in the transcript.   It can be assumed Hines is referring to when the prosecutor addressed Hines's explanation of the presence of money used in the last controlled buy, later found during a search of Hines's residence:

> The money in the drawer.  I was waiting to see how [Hines] was going to explain the five hundred dollars in the drawer.  How was he going to do that?  I was sitting there and my first choice was the tooth fairy.  The tooth fairy was loose and it must have been there.  Well, I thought, you wouldn't believe the tooth fairy.  I couldn't sell the tooth fairy to you guys.  So, what's he going to do?  Well, he made change.  He hasn't worked.  Well, that this guy just happens to come over, and just happens to pick him up, and just happens to drive him around the block, and just happens to pay him all of this cash, and he just happens to meet Stone. (sic)[8]  The guy that came around wasn't the guy that was bringing the cocaine, and it wasn't the reason they had to wait because he had to wait for the guy to pick him up, and they didn't have to go around the block because it was better.  Well, think about that.

(Tr. at 550-51.)

If a defendant testifies, a prosecutor may attack his credibility to the same extent as any other witness. *See United States v. Francis*, 170 F.3d 546, 551 (6th Cir.1999). A prosecutor may argue that a defendant is lying during her closing argument "when

---

[8]It appears that the court reporter inserted "(sic)" in the record because the prosecutor misspoke when he stated Stone, the confidential informant, rather than Gene Klinger as the person who conducted the actual transaction with Hines.

-41-

emphasizing discrepancies between the evidence and that defendant's testimony." *Id.*
To avoid any impropriety, however, the prosecutor's comments must "reflect reasonable inferences from the evidence adduced at trial." *Id.* (internal quotation omitted).

In the present case, Hines testified.  It is not unreasonable for the prosecutor to insinuate that Hines was not truthful when HInes stated that he was paid cash from an old job the day of the drug deal witnessed by police and that he exchanged this cash for marked police money later found in his possession.  Therefore, appellate counsel employed proper professional judgment in excluding this argument on appeal.

Finally, Hines accuses the prosecutor of arguing facts not in evidence.  Although Hines cites a page number, he gives absolutely no indication of which of the numerous facts presented by the prosecutor are in issue.  Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.  *See Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998).  Without factual or legal support for Hines's assertion that the prosecutor argued facts not in evidence, this court has no basis on which to determine the validity of this claim.  As such, Hines fails to demonstrate that appellate counsel was ineffective in failing to present a claim that the prosecutor argued facts not in evidence.

As Hines fails to present a viable claim of prosecutorial misconduct, he has not demonstrated that there was a reasonable probability that the inclusion of this issue on appeal would have changed the result of the appeal and, thus, has not demonstrated appellate counsel was ineffective for failing to present this ground on appeal.

### 4.    Confrontation Clause

Finally, Hines asserts that appellate counsel was ineffective for failing to raise a

-42-

Confrontation Clause as error on appeal.  Specifically, Hines objects to witness and confidential informant James Stone's testimony regarding out-of-court statements made by Gene Klinger, who was the "middle man" in the drug deals that serve as the basis of Hines's convictions.  Klinger's pre-arrest, out-of-court statements identify Hines as the contact for the drug deals.

An out-of-court statement does not violate the Confrontation Clause if "the evidence falls within a firmly rooted hearsay exception." *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).  The Supreme Court has held that the exception in the Federal Rules of Evidence for co-conspirators' statements is a firmly rooted exception to the hearsay rule. *See Bourjaily v. United States*, 483 U.S. 171, 182-84 (1987).  Ohio Rule of Evidence 801(D)(2)(e) is similar to Federal Rule of Evidence 801(d)(2)(E).  Both rules provide that "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" is not hearsay.

In the instant action, the statements by Gene Klinger fall into the hearsay exception provided by Rule 801(D)(2)(e).  The evidence demonstrates that Klinger was the go-between for Hines in the drug deals at issue and, as such, a co-conspirator under Ohio law.  *See Ohio v. Brownlow*, 2003 WL 22429697 (Ohio App. 2003) (out-of-court statements by middleman in a drug deal who obtained drugs from defendant are admissible under Rule 801(D)(2)(e)).  Klinger's out-of-court statements are admissible and do not violate the Confrontation Clause.  It is improbable that the inclusion of a Confrontation Clause error on appeal would have changed the outcome of Hines's case. Therefore, Hines's assertion that appellate counsel was ineffective for failing to raise this ground on appeal lacks merit.

-43-

## V.  CONCLUSION

For the foregoing reasons, it is recommended that Hines's petition for habeas relief be **DISMISSED**.


Date:  October 27, 2009                    s/ *Nancy A. Vecchiarelli*
                                           United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**